# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **MARGARET VYERS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **HOPE MCCLURE, individually** | § | **CIVIL ACTION NO.** _4:20-cv-911_ |
| **DON SPENCER, individually** | § | |
| **AND** | § | |
| **KIM COLLINS, individually,** | § | |
| **Defendants** | § | |

### PLAINTIFF MARGARET VYERS' ORIGINAL COMPLAINT

Plaintiff Margaret Vyers, by her attorneys, files this her Original Complaint against Defendants, alleging as follows:

### JURISDICTION AND VENUE

1.      This action arises under the First and Fourteenth Amendments of the United States Constitution through the cause of action created by the Civil Rights Act of 1871 (42 U.S.C. § 1983, "Section 1983"), as modified by the Civil Rights Attorney's Fee Awards Act of 1976 (42 U.S.C.A. § 1988[b]). Accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1338(a) (b).

2.      This Court has personal jurisdiction over all the Defendants as they reside and/or work within the Eastern District of Texas.

3.      Venue is appropriate in the Eastern District of Texas and this matter is properly in the Sherman Division, pursuant to 28 U.S.C. Section 1931(b)(2), because the acts or omissions that form the basis of this action occurred within Denton County, which is within the Sherman Division of the Eastern District of Texas.

**PLAINTIFF MARGARET VYERS' ORIGINAL COMPLAINT - PAGE 1**

## PARTIES

4.      Plaintiff **MARGARET VYERS** ("Vyers") is a Texas citizen residing in Denton, Texas.

5.      Defendant **HOPE MCCLURE** (McClure) is sued for her conduct in her individual capacity while acting under color of law through her role as Chief Appraiser of the Denton Central Appraisal District (DCAD). She is a resident and citizen of Texas.

6.      Defendant **DON SPENCER** (Spencer) is sued for his conduct in his individual capacity while acting under color of law through his role as DCAD's Deputy Chief Appraiser. He is a resident and citizen of Texas.

7.      Defendant **KIM COLLINS** (Collins) is sued for her conduct in her individual capacity while acting under color of law through her role as DCAD's Director of Human Resources. She is a resident and citizen of Texas.

8.      Each of the individual Defendants may be served through or at their place of employment:

Denton Central Appraisal District
3911 MORSE STREET
DENTON, TX 76208

Alternatively, if acceptance is granted, Defendants may be served through DCAD's Counsel:

Joseph J. Gordifa
Nichols, Jackson, Dillard, Hager, and Smith
500 N. Akard, Suite 1800
Dallas, Texas 75201

## THE FACTUAL BACKGROUND OF THE ACTION

9.      Prior to her termination, Vyers had been employed at DCAD since 2008.

10.     The factual background of Vyers' wrongful termination begins with the retirement of long-term Chief Appraiser Kathy Williams, and Ms. Williams' desire to engineer the hiring of her daughter, Hope McClure, as her replacement.

11.     Ms. Williams' actions in seeking the promotion of McClure were opposed by many of DCAD's employees who decided to exercise their First Amendment rights to speak to the DCAD Board of Directors (Board) on this matter of public concern.

12.     On November 27, 2019, Ms. Vyers and a number of her co-employees, using the collective name "Concerned Management and Employees," exercised their First Amendment right to free speech to oppose the hiring process related to the employment position that Ms. McClure was currently seeking and actively being trained for: the replacement for her mother, Kathy Williams, who had announced her pending retirement.

13.     Employees voiced their concerns about nepotism and its impact on morale in the letter. The document they sent to DCAD's Board is attached as Exhibit "A." It includes numerous reasons why these "Concerned Management and Employees" wanted a more transparent process and an open posting of the Chief Appraiser position. However, due to fear of retaliation, the letter was anonymous. Ms. Vyers was one of the participants that supported the forwarding of Exhibit "A" to the DCAD's Board.

14.     On December 8, 2019, a second letter outlining more specific concerns as a follow up to the earlier letter was sent to the Board in preparation for the December 12th meeting. It referred to 'proposed position changes' at DCAD.

15.     Both letters were mailed to the residences of the Board members out of concern that in sending it by the traditional route - to administration - they would not reach the Board due to the administration's conflict of interests. The letter was again anonymous out of fear of

retaliation, but reflected ongoing concerns voiced by multiple employees. The letter is attached as Exhibit "B" to this correspondence.

16.     The correspondence details several concerns related to the then-upcoming December 12, 2019 Board meeting regarding the position of Chief Appraiser:

> Kathy Williams, who is retiring and has posted her position as not only Human Resources Director but also Deputy Chief Appraiser, will ask the board to select her assistant, Hope Pierson McClure, to replace her so she can begin the transition.

17.     The letter explained that this "substantial percentage of employees" thought that the promotion was "ill-advised" and requested that it not occur. The letter detailed several areas of concerns that the promotion violated several areas of fundamental fairness, including:

- Nepotism: Ms. McClure is Kathy Williams' daughter.

- Favoritism in Advancement: Her quick advancement from the position of an administrative assistant to office manager had occurred without the job of "office manager" having been publicly posted.

- Favoritism in Training: Other employees were required to attend only in-house training, but as office manager Ms. McClure qualified to attend conferences and outside training, including a recent conference in Canada.

- Lack of Qualifications: Ms. McClure was not qualified for the position; although her certifications listed her as a registered appraiser and registered assessor/collector, she had not met the experience required by the state to hold either certification.

- Lack of Fairness: the unfair manner and speed of her advancement has resulted in a brain-drain as qualified and highly skilled employees left DCAD due to the unfairness.

18.     Due to fear of reprisals, neither of the above correspondences were signed.

19.     However, at the December 12, 2019, Board meeting, Ms. Vyers was among employees who filled the DCAD Boardroom and supported the public speakers calling for being

free of the influence of nepotism and its impact and selecting a chief appraiser willing to support employees.

20.     Ultimately, the Board took no action on the Deputy Chief position at the Board meeting on December 12, 2019. However, following the closed-door meeting with Mr. Stafford, Ms. McClure entered her name into the field of candidates for Chief Appraiser – despite having never been an appraiser.

21.     The Board selected her from an otherwise well-qualified field at its Board meeting January 30, 2020. However, Ms. McClure was presented by the Board to the employees as the new chief appraiser on the morning of Monday, February 3, 2020, with her mother having officially retired on January 31, 2020. On February 3, 2020, Ms. Vyers again publicly voiced concerns to the DCAD Board meeting about the Board's selection process and choice of Ms. McClure in front of the assembly of employees and the Board of Directors.

## DEFENDANTS' UNLAWFUL CONDUCT

22.     After her hiring as Chief appraiser, an atmosphere of retaliation started taking place as Ms. McClure has designed to make DCAD her personal fiefdom. Due to her lack of experience, she was unable to perceive or understand that many of her subordinates have more experience and expertise than she does. Any disagreement with her management or decision-making that comes from persons she believes were members of the "Concerned Management and Employees" – no matter how principled, no matter if it is based on the professional experience or expertise of her subordinate, and no matter if it is in any areas where she has no expertise – is treated as if it is a personal affront to Ms. McClure's authority.

23.     Thus, the professional opinions of many experienced and knowledgeable experts were routinely discarded by Ms. McClure and were replaced by her numerous personal fiats, and

any perceived opposition was answered with threats of personnel action due to falsely alleged insubordination or improper attitudes. This created a hostile work environment that has forced many of the experienced "Concerned Management and Employees" to leave DCAD through retirement, resignation, or finding employment elsewhere, rather than continuing to work where their professional opinions are treated as worthless and where any semblance of professional independence was treated as treachery and disloyalty in retaliation for having previously opposed Ms. McClure's hiring.

24.     Within the first nine months of Ms. McClure's hiring as Chief Appraiser, approximately 10% of DCAD's employees have left through retirement, resignation, or obtaining employment elsewhere.  Seven members of the "Concerned Management and Employees" have been forced out by the hostile work environment McClure has created for them and/or who have left through retirement, resignation, and/or gaining employment elsewhere since Ms. McClure's hiring as Chief Appraiser.

C.     **Ms. McClure Decides to Force Out or Terminate Ms. Vyers in the Spring of 2020 and Engineers Her Wrongful Termination When Vyers Will Not Resign**

25.     In contrast to other "Concerned Management and Employees" who left voluntarily and/or under pressure, Ms. Vyers sought to maintain her employment at DCAD and worked hard to fit in with Ms. McClure's management despite the hostile work environment Ms. McClure has created.

26.     Such efforts were useless. Unbeknownst to Ms. Vyers, the decision to terminate her employment had been made shortly after the Board meeting on February 3, 2020, where Ms. Vyers had criticized the hiring of Ms. McClure. Within a month of that meeting, Ms. McClure told other individuals of her plan to terminate Ms. Vyers once the appraisal roll was certified – typically in

mid-July each year. However, due to the COVID-19 Pandemic, certification took place in mid-September of 2020.

### 1.   The First Alleged Warning to Ms. Vyers – An Office-Wide Broadside

27.     On September 4, 2020, Ms. McClure sent a warning to all employees demanding personal fealty or the potential for facing negative employment action. The email included an area labeled as Rumors & Gossip:

> I have zero tolerance for this and employees will start being written up for it and then terminated. Rumors and gossip are a form of indirect harassment. If an employee or Leadership becomes aware of demeaning remarks or gossip that adversely affects an employee and/or the morale and culture of this District, then those comments will be considered workplace harassment and will be handled immediately.

28.     In the same email, she also warned against what she considered attempts by employees to seek answers to concerns from both her and Don Spencer, hired February 21st as Deputy Chief Appraiser.

> Please consider this the only written warning you will receive. Don't ever ask Don something and when you don't like his answer, then you come and ask me to see if you get a different answer. Or vise versa. That is the quickest way out of this office. We are a team, do not try to divide us!

### 2.   The Second Warning: Vague Claims of Impropriety with a Requested Explanation Refused

29.     On Thursday, September 24, 2020, at 9:40 am, Ms. McClure sent what she called a "second warning" to Ms. Vyers. This email warning was allegedly based on negative feedback she was receiving on Ms. Vyers including three factors: (1) alleged negative emails to other employees; (2) seeking information about the new employee chart from Ms. McClure's assistant; and (3) allegedly "telling other employees how to do their job and correcting them constantly," which Ms. McClure described as "harassment."

30.     In response, later that morning at 11:22, Ms. Vyers asked for clarification because she was "totally in the dark" as to what Ms. McClure meant.

> Greetings, thank you for the feedback, but I'm totally in the dark. I'd like to meet and review the emails you've received. I send, for instance, emails for clarification. Am I being negative in my wording and I don't realize it?
>
> I'm more than happy to make adjustments. I just need to know what to adjust.
>
> ...

31.     Amazingly, Ms. McClure believed that it would be a "breach of trust" for her to reveal details. Therefore, Ms. Vyers responded to the only item that came close to what Ms. McClure had described – she had forwarded taxpayer complaints to the department personnel responsible for the activity that the taxpayer was complaining of.  She also, on behalf of herself and others, let Ms. McClure be aware that there were problems in the office with office morale, especially regarding the **First Warning** email, which some employees found intimidating. These emails are all attached as Exhibit "C."

### 3.   The Wrongful Termination – No Warning and No Cause

32.     Two business days later, on Monday September 28, 2020, without explanation of what triggered her termination, Mr. Vyers was terminated for her alleged "attitude."

33.     Chief Appraiser Hope McClure, Deputy Chief Appraiser Don Spencer, and Kim Collins of Human Resources met with Ms. Vyers upon arrival and presented a letter notifying her she was fired for Disruptive Workplace Behavior. No explanation was provided in the letter nor, when sought, in person. Ms. Vyers explained to Ms. Collins of Human Resources - who had been excluded from the Second Warning email - that she had been denied any due process. Ms. Collins took notes but made no comment. Mr. Spencer made no comment as well.

34.     Ms. McClure and Mr. Spencer along with the IT Manager, Thomas Soret, oversaw Ms. Vyers' packing of her office, the same office she has had since 2008. In a shocking departure

from how H.R. issues are handled, within 10 minutes of Ms. Vyers leaving the building, Ms. McClure notified all employees via email that Ms. Vyers had been fired for "disruptive workforce behavior."

35.     Ms. McClure claimed, "Margaret was actively working against the culture and the values that we are working towards and have already set in motion for this District." A copy of the email is attached as Exhibit "D."

36.     In reality, Ms. Vyers was terminated in retaliation for exercising her right to free speech in November of 2019 through February of 2020. Ms. Vyers had the audacity of telling the DCAD Board of Directors that Ms. McClure was unqualified and that her hiring violated principles of good governance. Ms. McClure simply could not stand such free speech on the part of Ms. Vyers and decided to force her out, or fire her if she did not leave on her own. Ms. McClure was determined to build a fiefdom based on personal loyalty, and any set of employees who dare to have spoken against her would be systemically forced out or fired, either by the creation of a hostile work environment or by pretext.

37.     Defendant McClure acted recklessly and in callous disregard of Plaintiff's First Amendment rights so as to justify a punitive damages award against each.

**LEGAL GROUNDS**

38.     The First Amendment generally prohibits a public employer from disciplining, demoting, or firing an employee based on that employee's exercise of First Amendment rights, including speaking out on a matter of public concern or engaging in expressive conduct to the same effect, *see Fogarty*, 121 F.3d at 888, or associating with a particular political party, *see Goodman v. Pa. Turnpike*, 293 F.3d 655, 663–64 (3d Cir. 2002) (*citing Rutan v. Rep. Party of Ill.*, 497 U.S. 62, 75 (1990)).

39.     "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana,* 379 U.S. 64, 74-75, 85 S.Ct. 209, 215-16, 13 L.Ed.2d 125 (1964). Accordingly, the U.S. Supreme Court has frequently reaffirmed that speech on public issues occupies the "highest rung of the hierarchy of First Amendment values," and is entitled to special protection. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913, 102 S.Ct. 3409, 3426, 73 L.Ed.2d 1215 (1982); *Carey v. Brown,* 447 U.S. 455, 467, 100 S.Ct. 2286, 2293, 65 L.Ed.2d 263 (1980). Speech by citizens on matters of public concern lies at the heart of the First Amendment, which "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people," *Roth v. United States*, 354 U. S. 476, 484 (1957).

40.     This principle remains true when speech concerns information related to or learned through public employment. After all, public employees do not renounce their citizenship when they accept employment, and the U.S. Supreme Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights. *See, e.g., Keyishian v. Board of Regents of Univ. of State of N. Y.*, 385 U. S. 589, 605 (1967); *Pickering*, 391 U. S., at 568; Connick v. Myers, 461 U. S. 138, 142 (1983).

41.     Further, the Supreme Court has also made clear that there is considerable value in encouraging, rather than inhibiting, speech by public employees because "[g]overnment employees are often in the best position to know what ails the agencies for which they work." *Waters v. Churchill*, 511 U. S. 661, 674 (1994) (plurality opinion). "The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it." *San Diego v. Roe*, 543 U. S. 77, 82 (2004) (per curiam).

42.     Accordingly, First Amendment free speech rights of public employees can be raised in a variety of factual scenarios against their public employers. For example, the First Amendment protects employees for the following speech:

- An employee's complaints of sexual harassment by a Central official. *Azzaro v. County of Allegheny,* 110 F.3d 968, 978–81 (3d Cir.1997) (en banc);

- Manager's statements to media about lack of formal policies for assistance program available to police department employees; *Watters v. City of Philadelphia,* 55 F.3d 886, 893–94 (3d Cir.1995); and

- A state police employee's statements to media about retaliation she suffered because of her brother-in-law's court testimony against the state police. *Rode v. Dellarciprete,* 845 F.2d 1195, 1201–02 (3d Cir.1988)

43.     In this case, the speech in question pertaining to Ms. Vyers was the November and December correspondences to the Board and the February 3, 2020 speech to the Board and fellow employees.

44.     Prior case law clarifies that First Amendment speech to the public board that controls the employee's employment is protected by the First Amendment. *See, e.g., Czurlanis v. Albanese,* 721 F.2d 98, 104 (3d Cir.1983). Accordingly, speech by a county mechanic at county board meetings criticizing practices of the division of motor vehicles where he worked was protected by the First Amendment. *See. Id.*

45.     To prevail on a claim that a governmental employer has violated a governmental employee's right to free speech, the employee must establish that:

"(1) she spoke on a matter of public concern;

(2) her interest in that field outweighs the government's concern with the effective and efficient fulfillment of its responsibilities to the public;

(3) the speech caused the retaliation; and

(4) the adverse employment decision would not have occurred but for the speech."

*See, e.g., Fogarty v. Boles,* 121 F.3d 886, 888 (3rd Cir. 1997) (citing *Green v. Phila. Housing Auth.*, 105 F.3d 882, 885 (3d Cir. 1997))."

46.    To prove a cause of action under 42 U.S.C. Section 1983, the plaintiff must establish:

1.  conduct by a "person;"
2.  who acted "under color of state law;"
3.  proximately causing; and
4.  a deprivation of a federally protected right.

<u>**CLAIM FOR RELIEF**</u>
**(VIOLATION OF THE FIRST AMENDMENT)**

47.    Plaintiff realleges each allegation set forth in the paragraphs above.

48.    By reason of the foregoing, each Defendant acting under color of law proximately caused actual damages to Plaintiff Margaret Vyers by wrongfully terminating her employment in retaliation for Vyers' having exercised her First Amendment Right to Free Speech, in that Vyers was terminated in retaliation for speaking on a topic of public concern in a manner that embarrassed and angered Defendant McClure.

49.    Vyers has been injured by her wrongful damages and as a result should receive compensatory legal damages and equitable remedies, including but not limited to: back equitable reinstatement, if feasible, or front pay; mental anguish; loss of enjoyment life; the loss of benefits in the past and in the future; punitive damages; necessary and other compensatory damages or equitable relief that the Court finds just and/or right under Section 42 U.S.C. §1983; and Attorney Fees under  Section 42 U.S.C. §1988.

**JURY DEMAND**

50.    Although the Plaintiff seeks an equitable injunction of reinstatement or equitable front pay in the alternative, even cases with remedies sounding in equity, to the extent there are

one or more issues of fact or law suitable for a jury, the Plaintiff respectfully requests a jury trial on all such issues.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Margaret Vyers seeks relief against Defendants[s], separately or jointly and severally, as follows:

That this matter be submitted to a trial by jury on all legal issues and as a bench trial for all issues of equity, and that Judgment be entered against all Defendants:

    a.  finding that that Defendants are persons under 42 U.S.C. Section 1983;

    b.  finding that the Defendants acting under color of law violated Plaintiff's First Amendment Rights by terminated her employment in retaliation for protected speech of public interest and that Plaintiff's right to free speech outweighed any public interest;

    c.  Awarding Plaintiff compensatory damages and equitable relief, including back pay; equitable reinstatement or equitable front pay; loss benefits in the past and in the future; mental anguish and loss of enjoyment of life; punitive damages, and any and all other legal damages or equitable relief that the Court finds just and right under Section 42 U.S.C. §1983;

    d.  Award Plaintiff attorney fees pursuant to 42 U.S.C. §1988;

    e.  As to All Claims for Relief, that Plaintiff be awarded its costs of court, and all such other and further relief in law or equity as the Court deems to be just and right.

RESPECTFULLY SUBMITTED,

*/s/ Eric N. Roberson*

_____

Eric Roberson
Texas State Bar No. 00792803
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, TX 75204
214-379-0817 Direct
214.969.9099
214.379.0843 Fax
ENR@KilgoreLaw.com

**Concerned Management & Employees**
3911 Morse Street
Denton, TX 76205


27th November 2019


**Honorable Charles Stafford ETAL**
Board of Directors Chairman, Denton Central Appraisal District
3911 Morse St
Denton, TX 76205


Dear Mr. Stafford & Board,

A large number of employees have visited with management and we have chosen to write this letter because we feel that it is important that this issue be heard, but we feel that it is in the best interest of the district that it stays behind closed doors and not aired in a public meeting if possible.

It has come to our attention that the outgoing Deputy Chief Appraiser would like to push through their choice as to who is the new Deputy Chief Appraiser without having a Chief Appraiser in place.  Many employees are concerned that the appearance of nepotism and/or impropriety will cause the morale, that with the hope of new leadership has risen, to decline back to previous levels or below. We feel that a job posting for a job such as Deputy Chief Appraiser should be posted and interviewed only by the Chief Appraiser, which we do not currently have. An example of impropriety is that the Deputy Chief Appraiser (Admin) job description has been updated and posted while the Chief Appraiser position was vacant, and we feel that the Chief Appraiser should be the one defining and hiring that position.

We also understand that the outgoing Deputy Chief Appraiser would like to unduly influence the hiring of the new Chief Appraiser thus allowing them to influence any decisions made upon the Chief Appraiser being hired.  The hiring of this important position requires an exhaustive search and time to thoroughly investigate all options.

We are respectfully requesting that the Chief Appraiser hiring process be objective, fair, and transparent without undue influence or interference from anyone within the district.  The employees would like to know that an exhaustive search for our new chief was conducted and that everything from reviewing applications to interviewing and hiring was done with the utmost transparency and vigilance. Also, as the Tax Code only gives the Board of

**EXHIBIT A**

Directors the authority to hire/fire the Chief Appraiser, we ask that no recommendation or hiring be made for a Deputy Chief Appraiser at this time and that decision be left to whomever you hire as Chief Appraiser.

We feel that the Board of Directors has taken us towards more transparency with the changes to this point and are moving us forward. We appreciate all that has been done thus far, and would like to continue this trend with the new Chief Appraiser.

Sincerely,

Concerned Management & Employees

December 8, 2019

To: The Board of Directors of the Denton Central Appraisal District:
    Charles Stafford, Chairman
    David Terre, Vice Chairman
    Mike Hassett, Secretary
    Roy Atwood, Member
    George Pryor, Member
    Michelle French, Ex Officio member

RE: proposed position changes at DCAD

It is the understanding of employees of Denton Central Appraisal District that at the Dec. 12th Board of Directors's meeting, Kathy Williams, who is retiring and has posted her position as not only Human Resources Director but also Deputy Chief Appraiser, will ask the board to select her assistant, Hope Pierson McClung, to replace her so she can begin the transition.

Before the hearing, the board will receive a letter that is being supported by a substantial percentage of employees calling for no selection until a new chief appraiser can be hired.

This letter seeks to put into perspective the concerns of employees. Specifically, the concerns can be summed up with one word: nepotism: Mrs. McClung is Kathy Williams' daughter.

None of the comments in this letter are intended to take away from the dedication both women have shown toward their responsibilities and the staff. Kathy Williams has been a strong leader in providing for employee benefits. Many employees simply feel promoting Mrs. McClung, for the reasons stated below, is ill-advised.

A decade ago, Mrs. McClung held an administrative support position. A few years ago she was quietly promoted to an 'office manager", now with a salary of $90,000 a year, following the transfer of a single employee from Kathy Williams to her. The position was never publicly posted, or if it was, it was done so quietly no one knew. With the new position came executive-style furniture.

During this same decade, DCAD lost good employees, dedicated employees, employees who had internal issues where THEY had no support no matter where they turned, so they left.

The state of Texas offers several tax-professional designations, the most common at DCAD being RPA, or Registered Professional Appraiser. For applicants seeking a designation, the applicant must affirm they are actively engaged in their respective fields being sought. As part of the application process, a representative of DCAD must affirm their employment in the field being sought. A minimum of three years of experience must take place in that field before the designation can be obtained. Please see the link at the end of this letter for verification.

Mrs. McClung holds 3 state designations: RPA (Registered Professional Appraiser), RTA (Registered Texas Assessor/Collector) and CTA (Certified Tax Administrator). CTA is an internal program of the Texas Association of Assessing Officers (TAAO) described as being the 'best of the best' in property tax professionals.

**EXHIBIT B**

Mrs. McClung has never appraised property. She has never served as an assessor/collector. While actual appraisers put themselves at risk as field workers, Mrs. McClung's work environment has been her office. Appraisers further assist taxpayers and representatives of taxing entities as well; no designation as assessor/collector is required.

A few years ago, DCAD began offering appraiser classes in-house as a cost-cutting measure. At the same time, since 2010, many of Mrs. McClung's 380 hours of CE courses have been taken at conferences, the most recent one an IAAO conference in September with her mother in Canada at Niagara Falls.

The grooming of Mrs. McClung over the past decade has not set well with employees, who felt they had no outlet for their concerns. It's time for change, not status quo, but a recognition that ALL employees deserve fairness, respect, and support.

The decision by Mrs. Williams to put forth her daughter as second in charge was intended to be done quietly, with no notice to the employees. The reactions you are receiving with both letters shows the level of shock and dismay we are experiencing. Even the job application as posted is geared toward Mrs. McClung's background. We are seeking openness and transparency, and a recognition that nepotism will not be tolerated.

This letter also requests that the board consider establishing a policy stating that all employees seeking accreditation must meet the state's minimum standards in terms of education and experience.

Thank you for your efforts on behalf of the employees of Denton Central Appraisal District. We realize you have a challenging position. Please excuse the anonymous nature of this letter.

The link verifying educational requirements is here:

https://www.tdlr.texas.gov/taxprof/taxprofrules010114.pdf   page 3 and 4 along with Responsibilities of a Registrant on Page 7.

Also, on page 9 is the following under Use of Titles:

   ***A person may not use the titles Registered Professional Appraiser, Registered Texas Assessor/Collector, or Registered Texas Collector unless he is an active and certified registrant with the department and performing official duties as a property tax appraiser, assessor/collector, or collector.***

As an aside, TDLR is under Sunset review. The TDLR website has a link for Sunset Review comments. Please consider leaving comments stating designations should not be granted without TDLR proof of experience, which in this case does not exist. As DCAD is unfortunately a perfect example, no chief appraiser nor his/her staff alone should validate applications.

REDACTED

---------- Forwarded message ---------
From: **Hope McClure** <hope.mcclure@dentoncad.com>
Date: Thu, Sep 24, 2020 at 12:45 PM
Subject: Re: Written Warning
To: Margaret Vyers <margaret.vyers@dentoncad.com>
Cc: Don Spencer <don.spencer@dentoncad.com>, Jenna Simek <jenna.simek@dentoncad.com>


Margaret,

I think your email speaks for itself . Please stick to doing your job and only your job, which is a Residential Appraiser.

Further communication on the topic, can be scheduled for an in person meeting.

On Thu, Sep 24, 2020 at 12:32 PM Margaret Vyers <margaret.vyers@dentoncad.com> wrote:
  I appreciate the feedback.

1

**EXHIBIT C**

Every email I've sent recently was in reaction to inquiries presented to me that I forwarded. Perhaps I should have prefaced them to better explain the reasons for the emails. One recently was to IT about our website having misinformation - taxpayers were calling other employees and me, for instance, wanting that 1% value and asking about those incorrect hearing dates.

Thomas graciously quickly explained it was being worked on that weekend, and I passed that feedback on. One of those taxpayers who prompted that email called again this morning and called one of those same employees a liar when she communicated that feedback. Liz is the employee for independent verification.

People talk to you. They talk to me, too. They know I try to respect their concerns and that I try to find a solution to any problem they present to me. Hence the emails. However, if they're going to backfire on me either because of how I word them or the fact they're sent in the first place to people offended by receiving them, then I'm putting myself in an untenable position, and that needs to end.

Some of the feedback that has been communicated to me by employees - including your most ardent supporters initially - is they feel your emails have started to amount to intimidation. Intimidation rather than transparency plus worries that this will digress from intimidation to an outright hostile workplace. The culture you describe of 'productive, positive and life-giving culture' is certainly one any employee would want, but not one that many employees in reality are experiencing.

All of that said, we all realize this has been a tough year in every way possible. Fundamentally, people are still hopeful for a better work environment once all the dust settles.

As for whether I want official complaints created and put in my folder, I need to consider outside advice and will communicate further once I receive it.

*Margaret Vyers, RPA*

*Denton Central Appraisal District*

*Senior Appraiser*

*Phone: 940-349-3925*

*Metro: 972-434-2602 ext 3925*

*Fax: 940-349-3911*

*E-Mail: mvyers@dentoncad.com*

On Thu, Sep 24, 2020 at 11:22 AM Hope McClure <hope.mcclure@dentoncad.com> wrote:
> Margaret,
>
> As a leader of this organization, there is no way I would disrespect the employees that have shared with me in confidence that you make them uncomfortable. Now, if you want me to have them write up official statements, those statements will be placed in your permanent employee file. I am giving you the opportunity to correct the behaviors I listed in the first email without involving others.
>
> Negative attitude, overt pursuit of other people's work, herd mentality towards cynicism, and strained workplace relationships.
>
> These are the behaviors that have been expressed by others and have been pointed out by leadership.

Thank you,

**Hope McClure, RPA, CTA, CCA**
Chief Appraiser
Denton Central Appraisal District
(940) 349-3975


On Thu, Sep 24, 2020 at 9:40 AM Margaret Vyers <margaret.vyers@dentoncad.com> wrote:
Greetings, thank you for the feedback, but I'm totally in the dark. I'd like to meet and review the emails you've received. I send, for instance, emails for clarification. Am I being negative in my wording and I don't realize it?

I'm more than happy to make adjustments. I just need to know what to adjust.

As for your assistant, I asked her if she felt my job was in jeopardy as I understood she was creating a new flow chart. I didn't ask for details about the proposed new flow chart. A lot of people are worried, so we appreciate the comments you made in our meeting acknowledging word had gotten out. Transparency shouldn't envision an environment where people worry unnecessarily about their jobs.

When can we meet so I can review all the emails you've referenced? I'm definitely concerned if I've worded something where I've made employees feel they haven't done their jobs correctly.

Thank you



*Margaret Vyers, RPA*

*Denton Central Appraisal District*

*Senior Appraiser*

*Phone: 940-349-3925*

*Metro: 972-434-2602 ext 3925*

*Fax: 940-349-3911*

*E-Mail: mvyers@dentoncad.com*



On Thu, Sep 24, 2020 at 8:47 AM Hope McClure <hope.mcclure@dentoncad.com> wrote:
Margaret,

Why is it that at least 3x a week, your name is brought up to me from other employees? And never once has it been a positive interaction that they've experienced with you. Rather it is a negative email from you to them, you calling my assistant to try and pry confidential information out of her, or the big one is you telling other employees how to do their job and correcting them constantly. That's harassment Margaret and it is becoming a constant pattern I refuse to ignore anymore.

You were already warned once as an office, please consider this your second warning.

The culture in this office is moving towards a productive, positive and life-giving culture. This is your last opportunity to get on board and move forward with this District.

Thank you,

**Hope McClure, RPA, CTA, CCA**
Chief Appraiser
Denton Central Appraisal District
(940) 349-3975

--
**Hope McClure, RPA, CTA, CCA**
Chief Appraiser
Denton Central Appraisal District
(940) 349-3975

## Difficult decision

1 message

**Hope McClure** <hope.mcclure@dentoncad.com>                    Mon, Sep 28, 2020 at 8:38 AM
To: All Employees <allemployees@dentoncad.com>

Team,

I promised you I would always be honest and transparent with all of you. In times like these it is more difficult to do so, but we will never grow into a healthier workplace if we are afraid to have the uncomfortable conversations that we avoided in the past.

This morning we were tasked with the difficult decision to terminate Margaret Vyers for disruptive workplace behavior. Margaret was actively working against the culture and the values that we are working towards and have already set in motion for this District. The evidence became overwhelming to the point it could not be ignored any longer.

I know losing another Ag Appraiser will create a void in Residential, but I hope our staff can pull together and help fill any gaps that this will temporarily cause.

I want to encourage everyone that I have an open door policy and (although I will not discuss details with you on the above topic) I will listen and make time for any concerns that you may have.


Thank you,

**Hope McClure, RPA, CTA, CCA**
Chief Appraiser
Denton Central Appraisal District
(940) 349-3975

**EXHIBIT D**